## VALLE REYBURN, Appellant, v. ELL C. BENNETT et al., Respondents.

### St. Louis Court of Appeals, July 5, 1913.

1. **PARTNERSHIP: Existence of Relation: Intent.** Where persons who are associated together do not intend to form a partnership, the law does not create the relation, and such persons are not liable as partners except where the rights of third persons are involved.

2. **————: ————: Subscription to Proposed Corporation: Right of Recovery.** Defendants, who were partners and had invested $3000 in the partnership enterprise, being desirous of forming a corporation with $6000 additional capital, conceived the idea of organizing a corporation with $18,000 capital stock, having a par value of $100 a share, of which ninety shares of preferred stock, to represent $9000 actual assets, were to be issued to subscribers, and the balance, consisting of ninety shares of common stock, was to be given to them gratis. For this purpose, defendants induced plaintiff to subscribe $2000, under a contract reciting such intention of the parties, agreeing to organize a corporation, of which plaintiff was to be secretary and treasurer at a specified salary, and providing that plaintiff should have the option of withdrawing the full amount of his investment of $2000 if the full amount of $6000 additional capital was not subscribed within sixty days from the date of the contract. No corporation was ever formed, nor was the $6000 subscribed, and, after the expiration of the time limited, plaintiff elected to withdraw, and demanded a repayment of his subscription. *Held*, that while, as to third parties, plaintiff and defendants became partners, they were not such *inter se*, so as to limit plaintiff's recovery of the amount subscribed to the assets of the business, but that he was entitled to recover the same from defendants, under the strict terms of the contract.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Homer*, Judge.

REVERSED AND REMANDED (*with directions*).

*Lehmann & Lehmann* for appellant.

(1) Undoubtedly, pending the incorporation, the parties to the contract in this case were liable as part-

ners to third parties. As to whether they were partners between themselves is a different question, but immaterial in this case because: One partner can sue another partner at law for breach of contract, especially when the contract is the "articles of the partnership agreement" and where no accounting is involved the law action for breach of contract in such a case is generally exclusive. Owen v. Meroney, 136 N. C. 475; Guccione v. Scott, 21 Misc. Rep. 410; Kistner v. Tizjek, 88 Ill. App. 188; Robinson v. Bullock, 58 Ala. 618; Stone v. Wendover, 2 Mo. App. 247; 30 Cyc. 466, note 52. (2) The contract in this case was an agreement by defendants to repay to plaintiff the $2000 he was investing, if they did not succeed in getting $4000 additional into the business in sixty days. Guccione v. Scott, 21 Misc. Rep. (N. Y.) 410, affirmed 33 App. Div. 214; Kistner v. Tizjek, 88 Ill. App. 188. (3) Construing the contract to mean (which it does not mean as it does not so state), that plaintiff was to withdraw his $2000 from the assets of the partnership, the fact that there were no assets from which it could be withdrawn is no defense. If it was intended that the withdrawal was to be "contingent" on there being assets, the contract should have so stated. The contract was drawn by one of the defendants and the agreement for withdrawal was absolute and not contingent. 9 Cyc. 628; Coal Co. v. Packing Co., 138 Mo. App. 274; Law v. Paxton, 117 Mo. App. 541; Beattie v. Coal Co., 56 Mo. App. 221; Davis v. Smith, 15 Mo. 467.

*Judson, Green & Henry* for respondents.

(1) The court's findings on the evidence that plaintiff put his money in the partnership and paid it out in the conduct of the business are conclusive on appeal. Ball v. Wabash, 83 Mo. 574; Morrison v. Bomer, 195 Mo. 535; Crane v. Trust Co., 85 Mo. App. 601. (2)

the contract being ambiguous, the court, in construing the contract, properly considered the surrounding circumstances and conditions, and also the construction placed on the contract by the parties themselves as shown by their acts and conduct. Pub. Co. v. McNichols, 153 S. W. 562; Williams v. Railroad, 153 Mo. 534; St. Louis v. Gas L. Co., 155 Mo. 1; Const. Co. v. Tie Co., 185 Mo. 25; Laning v. Holmes, 93 Mo. App. 231; Williams v. Railroad, 85 Mo. App. 103; Rose v. Eclipse Co., 60 Mo. App. 28. (3) The court's construction of the contract, particularly of the word "withdraw" as used therein, as meaning withdraw from the assets of the partnership and as creating a claim in favor of plaintiff in the assets of the partnership, was correct, even though the contract be considered unambiguous, because words used in a contract are presumably used in their usual and ordinary sense, in the absence of anything to indicate a contrary intention. Good v. Erker, 153 S. W. 556; Edison Co. v. Bray, 88 Mo. App. 135; Greeson v. Railroad, 112 Mo. App. 116. (4) The doctrine that impossibility of performance is no excuse for nonperformance, has no application to this case.

NORTONI, J.—This is a suit on a contract and because of a breach of it. A jury was waived and the trial had before the court, where the finding and judgment were for defendant. From this judgment, plaintiff prosecutes the appeal.

It appears the two defendants, Ell C. Bennett and G. Valle Bain, were copartners doing business under the firm name of Ali Baba Post Card Company, in St. Louis, and desired to enlarge and incorporate their business. It is said the business of this partnership, together with contracts and supplies, was of the value of $3000. Defendants desired to enlist about $6000 additional capital and put in their partnership property at $3000, to the end of organizing a corporation of

$18,000 capital stock, to consist of 180 shares of the par value of $100 each, ninety shares of which stock were to be preferred and the remaining ninety to be common stock. With this end in view, plaintiff became interested in the venture and the parties entered into a written contract whereby plaintiff subscribed for $2000 of the preferred stock and $1000 of the common stock. Plaintiff paid $2000 cash into the treasury of the proposed company at once and accepted the position of secretary and treasurer at a salary of sixty dollars per month. During the interim, defendant Bain devoted his entire time to the business and drew a salary therefrom at $100 per month while Bennett devoted a portion of his time thereto and drew a salary of fifty dollars per month. At the time plaintiff paid his $2000 into the treasury for the stock to be thereafter delivered, the partnership, consisting of Bennett and Bain, had sixty dollars on hand. The books kept by the parties show a credit to cash, stock of Valle Reyburn, $2000; cash, stock subscribed, E. C. Bennett, $1500; cash, stock subscribed, G. V. Bain, $1500. The $1500 stock to Bennett and Bain each represented their interest in the business at the time plaintiff went into it. The $2000 paid in by plaintiff and the sixty dollars on hand under the old partnership constituted the entire cash on hand.

Though the contract in plain terms stipulated that the parties affiliated to the end of forming a corporation and with a view of enlisting $6000 additional capital, it appears no other subscription to the capital stock was obtained. Plaintiff's $2000 stood alone together with the property of the prior partnership but awaiting $4000 to be subscribed and introduced by others, which defendants undertook to enlist. From June first, the date of the contract, until some time in August, plaintiff continued as secretary and co-operated with defendants in managing the business which employed the money paid in by him in liquidation of the

prior debts of the partnership and the current expenses. Immediately after paying the $2000 subscribed and becoming secretary of the proposed company, which changed its name at the time as if preparing for incorporation, plaintiff and defendant Bain, on checks signed by both, paid out $1032 of the $2000 put in by plaintiff on old debts of the prior partnership existing between Bennett and Bain. The remainder of the $2000 paid in by plaintiff, it seems, was likewise paid out on account of current expenses during the time he was secretary; that is, something less than three months.

By the fourth and concluding paragraph of the contract, it is provided between the parties—that is, the two defendants and the plaintiff—that "the party of the second part—that is, plaintiff here—shall have the option of withdrawing the full amount of his investment of $2000 if the full amount of $6000 additional capital is not subscribed within sixty days from date hereof." The additional $4000 was not subscribed and the proposed corporation was not formed. Therefore, after the expiration of sixty days from the date of the contract, plaintiff withdrew (some time in. August) and demanded that defendants repay to him the $2000 paid into the treasury of the proposed company and for which no corporate stock had been issued. Defendants declined to do this and asserted that plaintiff had become a partner with them by thus going into the business on the first day of June and that the $2000 paid in by him had been fully consumed in the conduct of the partnership business. Thereafter, in September, plaintiff instituted this suit on the contract to recover his $2000 on the theory that, as no corporation had been formed and no stock had been issued therefor, he was entitled to step out and be repaid.

By the instructions given, it appears that the court, through construing the contract and considering the conduct of the parties thereunder, found the

fact to be that the prior partnership of Bennett and Bain was to be conducted with the plaintiff as a member thereof and the $2000 paid by him to be utilized as a part of its capital until the new corporation was formed. The court therefore declared that the words of the contract giving plaintiff the right to withdraw his $2000 must be construed to mean that the plaintiff had a right only to withdraw such money from the assets of the partnership and as there were no assets of the partnership at the time plaintiff withdrew therefrom, of course, no recovery could be allowed.

We believe this view of the contract and the conduct of the parties thereunder to be an erroneous one, for it is obvious the parties did precisely as the contract contemplated in the matter of conducting the business—that is, plaintiff paid in the $2000 as he agreed and took a position in the company which defendants had covenanted to incorporate and for which amount stock was to issue to him. The contract provides in plain terms that plaintiff should have the option of withdrawing the *full amount* of his investment of $2000 if the full amount of $6000 additional capital was not subscribed within sixty days from the date of the contract. If the contract reveals anything, it is an agreement to enlist $6000 additional capital and organize a corporation and issue stock therefor to those who subscribed and to Bennett and Bain for the $3000 represented as the alleged value of the prior business. It is obvious that such was the inducement to plaintiff on entering into the arrangement and it appears over the signature of all of the parties that if such was not accomplished within sixty days he might withdraw the "full amount" of the $2000 paid in by him. The contract in full is as follows:

"CONTRACT.

"St. Louis, Mo., June 1, 1910.

"This agreement made and entered into this first day of June, 1910, by and between Ell C. Bennett and

G. Valle Bain, parties of the first part, and Valle Reyburn, party of the second part, both of the city of St. Louis, State of Missouri, witnesseth:

"Whereas, it appearing that the said Ell C. Bennett and G. Valle Bain are the sole owners of a copartnership business known as the Ali Baba Post Card Co., that said business is composed of and represents a cash investment by said E. C. Bennett and G. Valle Bain, of three thousand dollars and certain contracts and agreements of value, by and between said Bennett and Bain and other firms and individuals, especially one contract with the National Invisible Print Co., a Missouri corporation, which contract does give the said Bennett and Bain, through one Frank I. Woesthaus, assignor to said Bennett and Bain, sole rights to have manufactured and to sell cards for correspondence purposes under the Morse Patent, 1908. Said business being further composed of outstanding accounts, stock on hand, fixtures, etc.

"Whereas, it appearing further that said Ell C. Bennett and G. Valle Bain are desirous of enlarging and changing their said copartnership business and to that end desire to interest additional cash capital to the amount of six thousand dollars and to incorporate said business under the laws of Missouri as soon as said six thousand dollars additional capital shall be subscribed.

"Whereas, it appearing further that said Valle Reyburn is desirous of entering said enlarged company, and for that purpose will provide a portion of said additional capital to the amount of two thousand dollars.

"Whereas, it further appearing that said Ell C. Bennett and G. Valle Bain, agree to separate their said copartnership business into one hundred eighty equal parts or shares of a par value of one hundred dollars each; ninety of which shall become preferred and ninety common stock of said reorganized company, upon in-

corporation of same. Said ninety parts or shares becoming preferred stock, drawing six per cent interest annually, payable semiannually and to be secured by all the assets and contracts of said company, and are to be purchased by payment into the treasury of the reorganized company of their par value, or nine thousand dollars; said nine thousand dollars to be represented by three thousand dollars cash investment in the Ali Baba Post Card Company, made by said Bennett and Bain, and by six thousand dollars additional cash to be furnished by whomsoever shall take over the remaining sixty shares.

"Further, that ninety shares to become common stock in the reorganized company shall be paid for by the contracts, particularly the contract above mentioned held with the National Invisible Print Co., to be turned over to said reorganization by the Bennett and Bain copartnership. Further, that with every two shares of preferred stock bought and paid for, one share of common shall be furnished gratis; and that the remainder of forty-five shares shall be and become the property of said Bennett and Bain in payment for said contract and business turned over to the new company, particularly the National Invisible Print Company contract mentioned.

"It is understood that by the above arrangement the stock will be held as follows:

"Ell C. Bennett, 15 shares preferred, 30 shares common stock.

"G. Valle Bain, 15 shares preferred, 30 shares common stock.

"Other investors, 60 shares preferred, 30 shares common stock.

_____

"Total        90 shares preferred, 90 shares common stock.

"It being further understood that each share of common stock should carry with it the right of one

vote at all stockholders' meetings; and that the preferred stock shall not vote.

"It being further understood that no executive officer or other employee of said reorganization shall draw a salary of more than $100 per month; unless otherwise authorized by a stockholders' vote representing not less than seven-ninths of the total voting power of said company.

"Now, therefore, it is agreed by and between the parties hereto.

"First: That the parties of the first part shall do, and by these presents promise and agree, to faithfully conform to the above stipulated terms and understandings; that the signing of these presents shall be a declaration by them of a division and reorganization of their present copartnership as above set forth, and that henceforth such reorganization shall be known as the International Invisible Ink Company, composed of ninety shares of preferred and ninety shares of common stock, of which stock said Bennett and said Bain own shares as above stated, the balance of sixty shares of preferred and thirty shares of common being in the treasury of said International Invisible Ink Company (less the 20 shares preferred and 10 shares of common purchased by these presents by the party of the second part) subject to sale as above stated.

"Second: In view of the above promises and agreement and the fulfillment of same, the party of the second part hereby agrees to pay and does pay into the treasury of said International Invisible Ink Company, receipt for such payment being hereby acknowledged, the sum of two thousand dollars in cash, thereby becoming the owner of 20 shares of preferred stock and 10 shares of common stock in said company, certificates for which to be issued immediately upon incorporation.

"Third: The officers of the International Invisible Ink Company shall consist of a President, a Vice-

President and General Manager, and a Secretary and Treasurer, chosen on the signing of these articles, this choice and the duties of said officers to be later ratified and laid down by the Board of Directors of said reorganization.

"Fourth: It is understood by and between the parties hereto that the party of the second part shall have the option of withdrawing the full amount of his investment of two thousand dollars if the full amount of six thousand dollars additional capital is not subscribed within 60 days from date hereof.

(Signed)

"Ell C. Bennett,

"G. Valle Bain,

"Parties of the First Part.

"Valle Reyburn,

"Party of the Second Part."

While it may be that these parties—that is, plaintiff and the two defendants—through associating themselves together under this contract, to the end of forming a corporation and embarking in business, in the interim became partners as to such third persons as might contract with them, it is entirely clear from the contract itself that no such relation was contemplated *inter sese*. Obviously the idea of the liability of the parties thus associated, when viewed from the standpoint of the rights of third parties contracting with them, confused the issue, but such is wholly immaterial here, for no such question is presented. Instead of some third party asserting a right against the three individuals as partners, the controversy is solely between the parties to the contract with respect to their rights among themselves as fixed and determined by the writing. When the contract is carefully pondered, and this, too, in the light of the circumstances surrounding the parties at the time and their subsequent conduct under it, it is perfectly clear that they did

not intend a partnership as between themselves, and the law does not create that relation in such circumstances when not intended, except where the rights of third parties are involved. In studying this contract with a view to analyze it and prepare the opinion of the court thereon, we have found the subject-matter fully covered in the argument of counsel for plaintiff. Indeed, the substance of the contract is so well stated and its provisions so completely analyzed in the brief, and this, too, so thoroughly in accordance with our views, that we are impelled to copy into the opinion the argument of plaintiff's counsel and approve it as a fair and just exposition of the relations of the parties and the obligations imposed. The counsel says:

"The contract in question in this case sets out by way of inducement:

"That defendants owned a copartnership in which they had invested $3000 and besides owned certain contracts of value.

"That they desired to enlarge this business by securing six thousand dollars additional cash capital, and to incorporate as soon as said six thousand dollars additional capital was subscribed.

"To get said additional capital and form such corporation, they desired to make the following arrangement: To organize a corporation to consist of $18,000 capital stock, $9000 to be preferred and $9000 common. The stock under the plan outlined was to be paid for by $6000 in cash, and the business and assets of the defendants, which represented $3000 cash invested by defendants, and contracts of value. Of the proposed corporation for their assets and business the defendants were to take $3000 of preferred stock and $6000 of common, and for $6000 of new capital to be subscribed by others the others were to have $6000 of preferred stock and $3000 of common, and the preferred stock was not to vote and pay six per cent dividends.

"For $3000, then, defendants were to have one-half of the total stock of the company and two-thirds of the voting stock. For $6000 the others were to have one-half the total stock and one-third the voting stock of the company.

"The contract then states:

'It is understood that by the above arrangements, the stock will be held as follows:

'Ell C. Bennett, 15 shares preferred and 30 shares common.

'C. Valle Bain, 15 shares preferred and 30 shares common.

'Other investors, 60 shares preferred and 30 shares common.'

"The contract then states:

'That the parties of the first part (defendants) do and by these premises, promise and agree to faithfully conform to the above stipulated terms and understandings.'

"What are the above stipulated terms and understandings, that defendants agree to faithfully conform to? They are that the defendants are desirous of forming a corporation for $9000 preferred and $9000 common stock, of which they shall own $3000 preferred stock and $6000 common stock on a previous cash investment of $3000 and that others on a present cash investment of $6000 shall own $6000 preferred and $3000 common stock. Among the 'above stipulated terms' was,

'It is understood that the stock will be held as follows:

'Defendants 30 shares preferred and 60 shares common.

'Others, 60 shares preferred and 30 shares common.'

"Does an agreement 'to faithfully conform to above stipulated terms and understandings' which consist of an expressed desire to form a corporation upon

certain conditions and an understanding as to how the stock will be held in the desired conditions, constitute an agreement to form such a corporation on the terms desired? We say that it does.

"While not stated as clearly as possible, we insist that the above language constituted an agreement on the part of the defendants to form the proposed corporation. If it does not, if defendant Bennett who wrote it did not intend plaintiff to so understand, what does the very next clause in the contract mean, to-wit:

" 'Second: In view of the above promises and agreement and the fulfillment of same, the party of the second party hereby agrees to pay and does pay into the treasury of said International Invisible Ink Company, receipt for such payment being hereby acknowledged, the sum of two thousand dollars in cash, thereby becoming the owner of 20 shares of preferred stock and 10 shares of common stock in said company, certificates for which to be issued immediately upon incorporation.'

"If defendants did not agree to form a corporation upon the conditions set out, then they did not agree to do anything and the words 'the parties of the first part shall do, and by these presents, promise and agree to faithfully conform to the above stipulated terms and understandings' must be held for naught. If there was no agreement to form a corporation and raise $6000 additional capital, then there were no 'above stipulated terms and understandings.' For if the 'above' did not 'stipulate' for a corporation and $6000 additional capital, it certainly stipulated for nothing else. It must be construed as we construed it, and as the plaintiff construed it and relied upon it, or else it means absolutely nothing.

"It does mean something. It means what it says, that defendants were to organize a corporation for the

purpose of getting $6000 new capital into their business.

"In the absence of stipulation, the defendants would have a reasonable time to do this. The matter of time was, however, expressly covered. The last clause of the contract which made all the trouble is:

'It is understood by and between the parties hereto that the party of the second part shall have the option of withdrawing the full amount of his investment of $2000 if the full amount of $6000 additional capital is not subscribed within sixty days from the date hereof.'"

The defendants clearly assumed the obligation of enlisting $6000 additional capital and forming a corporation and to furnish plaintiff with twenty shares of preferred and ten shares of common stock therein. Otherwise, if such was not done within sixty days, to repay him the $2000 advanced on account of his subscription if he chose to demand it. This obligation they have breached and are, therefore, liable to respond accordingly.

The judgment should be reversed and the cause remanded with directions to the trial court to enter judgment for plaintiff for the amount sued for and interest. It is so ordered. *Allen, J.,* concurs. *Reynolds, P. J.,* concurs in the result.